# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEE S. DAGOSTINI**
        **Petitioner,**

    **v.**                      **Case No. 06-C-1246**
                                    **(Criminal Case No. 04-CR-146)**

**UNITED STATES OF AMERICA**
        **Respondent.**

## RULE 4 ORDER

Petitioner Lee Dagostini, by counsel, brings this action under 28 U.S.C. § 2255 seeking an order vacating his conviction and sentence. I sentenced petitioner to 151 months in prison following his guilty pleas to fraud and money laundering offenses. In the instant motion, petitioner claims that his trial counsel provided ineffective assistance by miscalculating his guideline range, thereby inducing him to plead guilty rather than go to trial.

Rule 4 of the Rules Governing § 2255 Proceedings requires me to preliminarily examine the motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer . . . .

Rule 4(b), Rules Governing § 2255 Proceedings. Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction

to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255 ¶ 1.

## I. BACKGROUND

In my sentencing memorandum, I summarized the pertinent facts as follows:

Defendant Lee Dagostini devised a scheme whereby he fraudulently obtained over 250 credit cards using fictitious personas, then ran up the balances on the cards. In furtherance of the scheme, he opened bank accounts in the names of his fictional personas and created a phony business – "Land's Consulting" – into which he deposited some of the proceeds of the scheme. He then "paid" himself with payroll checks drawn on the Land's account, which were signed by his wife. The scheme ultimately cost various banks and credit card issuers over $1.2 million in losses. The scheme was discovered when police officers, investigating a possible burglary in defendant's office, happened upon some of the cards and documents pertaining to fictitious identities. Defendant was arrested and charged, but continued to operate the scheme after his release. His continued conduct was discovered, he was detained, and the government charged additional offenses.

Defendant pleaded guilty, without an agreement with the government, to possession of 15 or more unauthorized access devices, 18 U.S.C. § 1029(a)(3), mail fraud, 18 U.S.C. § 1341, money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and conspiracy to commit money laundering while on pre-trial release, 18 U.S.C. §§ 1956(h) & 3147. The probation office prepared a pre-sentence report, which calculated his offense level ("OL") as 38. On Counts 1 and 2, the PSR calculated the base OL as 7, U.S.S.G. § 2B1.1(a), plus 16 for amount of loss, § 2B1.1(b)(1)(I), plus 2 for 10 or more victims, § 2B1.1(b)(2)(A)(i), plus 2 for use of sophisticated means, § 2B1.1(b)(9)(C), and plus 2 for derivation of more than $1,000,000 in gross receipts from one or more financial institutions, § 2B1.1(b)(13)(A), for an adjusted OL of 29. On counts 3 and 4, the PSR calculated the base OL as 29, § 2S1.1(a)(1), plus 2 based on the conviction under § 1956, § 2S1.1(b)(2)(B), plus 2 for sophisticated laundering, § 2S1.1(b)(3), plus 3 for commission of count 4 while on pre-trial release, § 2J1.7, and plus 2 for aggravated role in the offense, § 3B1.1(c), for an adjusted OL of 38. All counts were grouped under § 3D1.2(c), for a final OL of 38. Defendant's criminal history category ("CHC") was II based on one prior conviction that scored 1 point, § 4A1.1(c), and his commission of part of the instant offense while on probation, which scored 2 points, § 4A1.1(d). The resulting advisory range was 262-327 months imprisonment.

> Defendant objected to various guideline calculations and moved for downward departure on several bases. He also requested a sentence below the advisory range based on the 18 U.S.C. § 3553(a) factors. The government opposed all of defendant's requests and moved for an upward departure under § 4A1.3 based on uncharged criminal conduct.

(Sentencing Mem. [R. 90, Case No. 04-CR-146] at 1-2.)

I declined to impose the enhancement for sophisticated money laundering, creating a guideline range of 210-262 months. (Id. at 3-10.) I denied the parties' departure motions. (Id. at 10-12.) Finally, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), I imposed a total sentence of 151 months: 120 months (the statutory maximum) on count one (credit card fraud) and 130 months on counts two (mail fraud) and three (money laundering) all to run concurrently, and 21 months on count four (money laundering conspiracy while on pre-trial release) to run consecutively to counts one, two and three.

Both parties filed notices of appeal but later dismissed their appeals.

## II. DISCUSSION

Petitioner's sole claim for collateral relief is that his trial lawyer provided ineffective assistance of counsel.[1] Specifically, he claims that counsel miscalculated his guideline range. He attaches to his motion a letter counsel apparently sent him, which under-estimates the guideline range I ultimately adopted. Petitioner claims that had he been properly advised, he would not have pleaded guilty and would have gone to trial.

### A.  Applicable Legal Standard

In order to demonstrate ineffective assistance of counsel, petitioner must show two things. First, he must show that "counsel's performance was deficient. This requires

---

[1] Such claims may be brought for the first time under § 2255; they need not be raised on direct appeal. See Massaro v. United States, 538 U.S. 500 (2003).

3

showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, he must demonstrate prejudice, i.e. "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because petitioner's claim relates to his lawyer's advice regarding a guilty plea, he must show "(1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." Bethel v. United States, 458 F.3d 711, 716 (7th Cir. 2006) (citing Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)).

In assessing counsel's performance, the Seventh Circuit has noted that a "competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." Id. at 717. However, counsel need not make an unerring prediction in order to be effective. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." McMann v. Richardson, 397 U.S. 759, 770 (1970). "Although a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency." Bethel, 458 F.3d at 717. "The salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." Id. (citing United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1993); United States v. Arvanitis,

4

902 F.2d 489, 494 (7th Cir. 1990)).

Under the prejudice prong, the defendant must show, through objective evidence, that absent counsel's faulty advice a reasonable probability exists that he would have gone to trial. Berkey v. United States, 318 F.3d 768, 773 (7th Cir. 2003). A "mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." Bethel, 458 F.3d at 718. Further, a defendant's claim that he would have gone to trial, even coupled with an inaccurate prediction of the sentence from counsel, will still be insufficient if the defendant assured the court at his plea hearing that he was not relying on a particular sentence in entering his plea. Id. (citing United States v. Peterson, 414 F.3d 825, 827 (7th Cir.), cert. denied, 126 S. Ct. 592 (2005)).

**B.   Analysis**

   **1.   Performance**

Petitioner relies on letters counsel allegedly sent him to establish deficient performance. I first note that the letters are not authenticated, and it is thus doubtful that I can rely on them. See Stokes v. United States, 652 F.2d 1 (7th Cir. 1981) (reversing where district judge decided § 2255 motion based on unsworn statements). However, even if I were to consider them, the letters do not demonstrate that counsel failed to make a good faith evaluation of petitioner's situation. In order to place the letters in proper context, I will indicate when the key events in this case took place in discussing them.[2]

Petitioner was indicted on June 22, 2004, on a single count of credit card fraud, contrary to 18 U.S.C. § 1029(a)(3). (R. 13.) He was arraigned on July 1, 2004, and

---

[2]The record citations (R. __) in this section of the decision are from the underlying criminal case, No. 04-CR-146.

released. On July 20, 2004, petitioner's bond was revoked based on allegations that his fraud continued after his release. (R. 18-20.) The government obtained a superseding indictment on July 27, 2004, adding charges of wire fraud. (R. 21.) Petitioner then filed and litigated pre-trial motions, including a motion to suppress, which I denied on January 24, 2005. (R. 51.) This sets the stage for the first letter from counsel.

On February 7, 2005, counsel apparently wrote petitioner, stating that the purpose of the letter was "to outline various sentencing scenarios in the event that your case is resolved with an adverse jury verdict, or a plea agreement." (Mot. to Vacate Ex. 1 at 1.) The letter went on to state that the sentencing guidelines were no longer mandatory, and that there was no guarantee that the court would impose a particular sentence.[3] Then, based on the sentencing allegations contained in the superseding indictment,[4] counsel predicted an offense level of 23 on the credit card fraud count (base level 6, plus 16 for loss, plus 2 for 10 or more victims, and minus 3 for acceptance of responsibility). Coupled with a (correctly predicted) criminal history category of II, counsel estimated a guideline range of 51-63 months. Counsel did not make a prediction on the wire fraud counts, but stated that he did not believe they would have a material effect on the guideline calculation. He further stated that, based on petitioner's commission of an offense while on bond, 18 U.S.C. § 3147 would require imposition of a consecutive prison sentence. Finally, counsel indicated that the government had mentioned adding a money laundering charge in

---

[3]The letter was written about one month after the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005).

[4]At the time the superseding indictment was filed – between Blakely and Booker – the government had taken to including guideline enhancements in their indictments in the event the Supreme Court decided to require jury findings on such enhancements.

6

another superseding indictment. He stated: "Because I do not know what amount of money [the government] claims you laundered, or the manner in which it was laundered, it is relatively pointless to do a guideline calculation. My tentative view is that the money laundering charges would not have a significant impact in the guidelines, but we need to leave that open until we get a more definite position from the government." (Id. Ex. 1 at 3.)

On March 30, 2005, the government filed an information adding money laundering (count three) and money laundering conspiracy while on pre-trial release (count four) charges, and altering count two to charge mail fraud. (R. 56.) Petitioner entered blind pleas to all counts of the information. (R. 59.) I ordered a pre-sentence report and set the case for sentencing.

On August 24, 2005, counsel apparently again wrote petitioner, stating in pertinent part:

> I am sure that by now you have seen the presentence report. There are three reasons why you should not panic: (1) the presentence report simply adopts the government's version of the offense, and I think a good argument can be made that the government's version with respect to the guideline enhancements is completely out-of-line; (2) of the four judges in our district, Judge Adelman has been the most willing to impose sentences below the advisory sentencing guideline range; and (3) I will do everything in my power to help you.

(Mot. to Vacate Ex. 2 at 1.)

Thereafter, counsel filed detailed objections to the PSR, departure requests, and a request for a non-guideline sentence, supported by a psychiatric report. (R. 77-79.) As noted, I partially accepted those arguments and imposed a non-guideline sentence.

In the instant motion, petitioner argues that the calculations in the February 7, 2005

7

letter were not even close to the actual guideline range finally adopted.[5] However, it is well-settled that a mere inaccurate prediction alone is insufficient. <u>Bethel</u>, 458 F.3d at 717. Petitioner makes no argument – and offers no evidence – that counsel failed to act in good faith in estimating the guideline range. The letter itself indicates that counsel consulted the relevant statutes and guidelines, and investigated petitioner's criminal history. Petitioner also glosses over the fact that counsel indicated in the letter that he was only making an estimate, and that because the guidelines were now advisory, the judge would be free to sentence outside the range. Counsel certainly did not guarantee petitioner any particular sentence.

Further, counsel made these predictions prior to the filing of the money laundering charges and stated that it would at that juncture be "pointless" to try to make a guideline calculation related to such charges. It was those charges which eventually resulted in the range being much higher than counsel predicted (level 36). As discussed above, the offense level on the non-money laundering charges ended up being 29. The difference between counsel's prediction, 23, and the final level is easily explained. Petitioner continued his criminal conduct after he was charged and apparently even after he was detained, causing him to lose the 3 level reduction for acceptance of responsibility. (R. 90 at 18.) And, the government later decided to pursue a 2-level enhancement under U.S.S.G. § 2B1.1(b)(13)(A) based on petitioner's receipt of more than $1,000,000 in gross receipts from one or more financial institutions, which required it to present testimony at

---

[5]Petitioner states that the range was 262-327 months. (Mot. to Vacate at 3.) He is wrong. That was the range set by the PSR; I adopted a range of 210-262 months.

the sentencing hearing.[6] (Id. at 3-4.) Counsel did not perform deficiently by failing to predict these two alterations in the range.

Petitioner argues that counsel started off with the wrong base offense level, 6, while a "simple reading" of the guideline would have indicated that the level was 7. (Mot. to Vacate at 4.) Actually, it is petitioner who misreads the guideline. Counsel predicted a base level of 6 on the credit card fraud count, which was correct. Under U.S.S.G. § 2B1.1(a), the base level is 7 if the offense carries a statutory maximum of 20 years or more, 6 otherwise. Credit card fraud under 18 U.S.C. § 1029(a)(3) carries a statutory maximum of 10 years. The base level became 7 only with the addition of the mail fraud count. Counsel declined to predict the range based on (what was at the time) the wire fraud count.

Counsel based his predictions on the enhancements charged by the government at the time. The fact that the government later filed additional charges and sought further enhancements does not mean that counsel's prediction was not made in good faith. Petitioner argues that counsel "failed to attribute any impact the money laundering counts would have on the ultimate sentencing determination." (Mot. to Vacate at 4.) But at the time counsel wrote the letter, those counts had not even been charged. As counsel stated in the February 7, 2005 letter, it was "pointless to do a guideline calculation" until the government indicated how much money was laundered and the manner in which it was laundered. (Id. Ex. 1 at 3.) The Sixth Amendment does not require counsel to accurately

---

[6] I note that it is clear from the transcript of the plea hearing that, by the time he entered his pleas, petitioner knew that this enhancement was a possibility. He also knew that he could not withdraw his pleas if the court imposed it. (Plea Hr'g Tr. [R. 116] at 12-14.)

predict the impact of charges not yet filed, based on evidence not yet produced.

For all of these reasons, petitioner fails to demonstrate that counsel performed deficiently.

**2.    Prejudice**

Petitioner states that had he been properly advised he would have gone to trial. However, he offers absolutely no evidence in support of this assertion (made in the motion signed only by counsel), not even an affidavit or other sworn statement to this effect. See Arvanitis, 902 F.2d at 494 (noting that a "mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice," and that the petitioner did "not even make this allegation").  Thus, he cannot establish prejudice.[7]

Petitioner states that if an evidentiary hearing is held, it would disclose a reasonable probability that, but for counsel's errors, he would have insisted on going to trial. (Mot. to Vacate at 5.)  However, in order for a hearing to be granted, the petitioner must present a detailed and specific affidavit showing that he has actual proof of the allegations going beyond mere unsupported assertions. Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002); see also Gallo-Vasquez v. United States, 402 F.3d 793, 798 (7th Cir. 2005). Petitioner presents no such affidavit here.

Petitioner's further claims related to the prejudice prong also fail.  Petitioner asserts that he relied on counsel's calculations in pleading guilty, and that he believed his

---

[7] I recognize that in Kafo v. United States, 467 F.3d 1063 (7th Cir. 2006), the court of appeals recently held that the better practice when a pro se § 2255 movant fails to file a required affidavit is to afford him a chance to do so before dismissing his case. In the present case, petitioner is represented by counsel.  Further, as discussed in the text, petitioner's claim also fails for other reasons. Thus, I decline to provide him an opportunity to bolster his motion with an affidavit.

10

"maximum exposure was 63 months." (Mot. to Vacate at 3.) The claim is flatly contrary to petitioner's statements during the plea hearing, where he assured me that he understood (1) the possible statutory penalties he faced (Plea Hr'g Tr. [R. 116] at 6-7); (2) that the guidelines were advisory only, meaning that I could sentence him up to the statutory limits (id. at 7); (3) that the sentencing decisions were mine alone (id. at 7); (4) that he could not withdraw his plea if he disagreed with those decisions (id. at 8); and (5) that no one had threatened or promised him anything to induce his waiver of indictment and plea (id. at 4, 8). In his written Notice of Intent to Enter Guilty Plea and Waiver of Rights Form, which petitioner assured me he had read and understood (id. at 6), petitioner further stated that "no threats, promises, representations or other inducements have been made to induce him to plead guilty." (R. 58 at 3.) Despite these assurances, in the instant motion, petitioner claims that he relied on a representation from counsel that his exposure was barely five years, and that counsel never informed him that he faced a greater penalty. Because I properly advised petitioner of the possible penalties he faced, any alleged contrary representation by counsel is irrelevant. See, e.g., United States v. Martinez, 169 F.3d 1049, 1054 (7th Cir. 1999) (finding no prejudice where district judge accurately advised the defendant of the penalties he faced, correcting alleged misstatement by counsel). Petitioner offers no explanation for the contradiction between his current position and his statements at the plea hearing, and "a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." Peterson, 414 F.3d at 827. Petitioner offer no such justification.

Finally, petitioner states that, because the court denied a reduction for acceptance

11

of responsibility, he had little to lose by going to trial. However, at the time of the plea, it was made quite clear to petitioner that the guideline decision was mine alone. Further, the denial of that reduction, based in part on petitioner's continued criminal conduct after he was charged and detained, could not necessarily have been predicted by counsel. Finally, petitioner did gain a sentencing advantage by pleading, as I gave him credit for that decision under § 3553(a). (R. 90 at 21.) Petitioner also notes that had he gone to trial he could have appealed the denial of his motion to suppress. However, there is no indication that petitioner did not understand that he was waiving his right to appeal that decision,[8] or that such waiver played any material role in his decision to plead.

Therefore, for all of these reasons, petitioner fails to demonstrate prejudice.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of December, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[8] In fact, the plea hearing transcript confirms that petitioner knew he was waiving his right to appeal the denial of his motions. (R. 116 at 15-16.)